**VAREL MANUFACTURING COMPANY, Appellant,**

**v.**

**ACETYLENE OXYGEN COMPANY, Appellee.**

No. 13–97–731–CV.

Court of Appeals of Texas, Corpus Christi.

April 15, 1999.

Melissa A. Ostermann, Attorney at Law, Dallas, Stephen B. Schulte, Houston, for Appellant.

Daniel G. Gurwitz, Atlas & Hall, Attorneys at Law, Tina VanDalsem Snelling, Hirsch, Sheiness & Garcia, Houston, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

Opinion by Justice DORSEY.

Varel Manufacturing Company appeals from a judgment rendered against it, and in favor of Acetylene Oxygen Company, for the conversion of gas cylinders and denying Varel's counterclaims. Varel raises eighteen points of error complaining that it was entitled to usury damages and that Acetylene should not have prevailed on its claim for conversion. Acetylene raises two cross-points complaining of a minor usury penalty actually awarded against it by the trial court. We reverse and remand.

Varel operates a manufacturing plant in Matamoros, Mexico. Varel purchased various industrial gases from Acetylene from the 1960's until 1992. These gases were contained in pressurized cylinders that were regularly delivered by Acetylene to Varel. When the full ones were delivered, the depleted cylinders would be picked up to be refilled. Acetylene charged daily rental on each cylinder used. When Varel stopped purchasing gas from Acetylene in 1992, Acetylene continued to charge rental on 115 cylinders that it claimed had not been returned. When Varel ceased making rental payments, Acetylene demanded the cylinders be returned. When they were not, Acetylene sued for past rental value and conversion of the cylinders. Varel denied retention of the cylinders and counterclaimed for overpayments and for usurious interest.

At trial, Bert Wolf, president of Acetylene, testified that Varel owed Acetylene $45,181.25 in unpaid rental for cylinders and for the market value of those cylinders, based on the invoices and monthly statements that Acetylene maintained showing that Varel had retained some 115 cylinders since it stopped purchasing gas from Acetylene in 1992. Varel admitted that, due to a mistake in its own accounting procedures, it had continued to pay for the 115 cylinders until October 1995, when it discovered that it no longer had those cylinders. Two of Varel's employees testified that they conducted inventories and determined that all of Acetylene's cylinders had been returned to it. Varel additionally sought to prove its counterclaim for usury by showing that the invoices and statements by Acetylene contained a provision for a service charge, in spite of the fact that they had agreed that no interest would be charged on the account.

The trial court rendered judgment against Varel for conversion of the cylinders in the amount of $28,096, for cylinder rent of $12,276.25, and for reasonable attorney's fees, but off-set the award by a $355.55 usury penalty against Acetylene for charging excessive interest on the amounts it billed to Varel.

## USURY

By its first three points of error, Varel complains that the evidence conclusively established its claim that Acetylene charged usurious interest on Varel's account for the entire amount that Acetylene claimed for rental of the cylinders and that the trial court erred in awarding a lesser penalty only on the amount for which Varel was actually billed a service charge.

Varel also complains by its fourth point of error that the trial court erred in failing to award its attorney's fees for prosecution of the usury claim.

Acetylene contends that its charges for the rental of cylinders are not subject to the usury statute, and that, even if subject, its notice of the service charge and pleadings for interest do not amount to charging interest under the statute. In addition, Acetylene complains by two cross-points that the trial court erred in assessing the penalty that it did for usurious interest and in denying Acetylene leave to file a trial amendment raising various affirmative defenses to Varel's claim for usury.

We conclude that the bulk of Varel's claims do not amount to a violation of the usury statute, and that the one instance which does amount to such a violation should have been denied as having been brought beyond the statute of limitations. Varel is thus not entitled to attorney's fees for the prosecution of its usury claims.

A person who contracts for, charges, or receives interest that is greater than the amount authorized by law is liable to the obligor for the penalties set forth in the usury statute. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–1.06 (Vernon 1987) (repealed).[1] For purposes of the usury statute, "interest" is defined as "compensation allowed by law for the use or forbearance or detention of money." Tex.Rev.Civ. Stat. Ann. art. 5069–1.01(a) (Vernon 1987) (repealed).[2]

■ Accordingly, the essential elements of a usurious transaction are: (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982); *Pentico v. Mad–Wayler, Inc.,* 964 S.W.2d 708, 714 (Tex.App.—Corpus Christi 1998, pet. denied). Moreover, since usury statutes are penal in nature, they must be strictly con-

strued. *Steves Sash & Door Co., Inc. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex. 1988); *Pentico,* 964 S.W.2d at 714.

■ In the present case, Varel complains that Acetylene charged it usurious interest in spite of the fact that the parties had agreed that no interest would be charged on Varel's account. Specifically, Varel alleged that usurious interest was charged, first, by virtue of the terms printed on the invoices and statements, specifying that, "Your Finance Charge is computed by a single periodic rate of 1.50% per month, which is an annual percentage rate of 18% and will be added if not paid by the 20 th of the month." In all but one instance, however, no interest was ever added to the balance that Acetylene claimed due from Varel. Second, Varel alleged a usurious charging of interest by the allegations in Acetylene's original petition of an agreement to pay interest at 18% on the delinquent amounts and its prayer for a judgment against Varel for such interest.

Acetylene argues that its transactions with Varel amount to rentals rather than loan transactions, and thus are not subject to the usury statute.

Several courts of appeals have held that, because a rental or lease agreement is not a "lending transaction," the usury statute does not apply to late charges assessed on overdue rental payments. *Potomac Leasing Co. v. Housing Authority of City of El Paso,* 743 S.W.2d 712, 713 (Tex.App.—El Paso 1987, writ denied); *Brokers Leasing Corp. v. Standard Pipeline Coating Co.,* 602 S.W.2d 278, 281 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e); *Apparel Mfg. Co., Inc. v. Vantage Properties, Inc.,* 597 S.W.2d 447, 448–49 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Division,* 572 S.W.2d 53, 55 (Tex. Civ.App.—Houston [1 st Dist.] 1978, no writ); *Maloney v. Andrews,* 483 S.W.2d

---

1. Now codified at Tex. Fin.Code Ann. § 305.001 (Vernon 1998).

2. Now codified at Tex. Fin.Code Ann. § 301.002(a) (Vernon 1998).

703 (Tex.Civ.App.—Eastland 1972, writ ref'd n.r.e.).

However, we need not determine whether these cases were correctly decided, since the invoices and statements in the present case charge Varel not only for rental of the cylinders but also for the gas products that Acetylene sold to Varel. At least to the extent the balances and service charges applied to sales of gas, they were not rental transactions and were subject to the usury statute.

 A "service charge" or "finance charge" assessed on an open account is generally considered "interest" within the meaning of the usury statute. *Windhorst v. Adcock Pipe and Supply,* 547 S.W.2d 260, 260–61 (Tex.1977); *Flato Elec. Supply Co. v. Grant,* 620 S.W.2d 915, 917 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). The statute covers late charges of this nature because the definition of "interest" includes compensation for the obligor's detention of money past the date it is due and payable. *Pentico,* 964 S.W.2d at 715–16; *Veytia v. Seiter,* 740 S.W.2d 64, 65 (Tex.App.—San Antonio 1987), *aff'd,* 756 S.W.2d 303 (Tex.1988); *Dixon v. Brooks,* 604 S.W.2d 330 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Under the open account transaction, credit is extended from the date of purchase to the date of payment, and thus becomes a debt or detention of money on which usurious interest may not be charged. *See Potomac Leasing,* 743 S.W.2d at 713.

Accordingly, the usury laws do apply to the present transactions and would prevent Acetylene from charging usurious interest to Varel on its past due accounts for the sale of gases on open account. Nevertheless, Acetylene further argues that, even if the usury statute applies generally to the present transactions, neither the invoices nor its pleadings amounted to a "charging" of interest in violation of that statute. We agree.

 Under the usury statute, interest may be "charged" by any act of the lender constituting a demand for payment from the debtor. *See Pentico,* 964 S.W.2d at 715–16. Accordingly, a usurious charge may be contained in an invoice, a letter, a ledger sheet or other book or document, and the vehicle for the claim or demand is immaterial except as an evidentiary fact. *Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300, 304 (Tex.1987) (pay-off quote reflecting a charge of usurious interest); *Pentico,* 964 S.W.2d at 715–16 (amortization schedule which accompanied demand letter constituted a "charge" of interest); *Williams v. Back,* 624 S.W.2d 272, 276–77 (Tex.App.—Austin 1981, no writ).

 However, not every mention of interest or a service charge amounts to a charge or demand. When the creditor places terms on its invoice stating that a usurious interest charge *will be* added to any payments later than a certain specified period, but takes no further action to charge or collect from the debtor any amount of usurious interest, this does not amount to a "charge" or present demand for payment of the usurious rate of interest, and therefore does not violate the usury statute. *White v. Groco Corp.,* 783 S.W.2d 24, 26 (Tex.App.—Eastland 1990, writ denied); *Thomas Conveyor Co., Inc. v. Portec, Inc.,* 572 S.W.2d 361, 363 (Tex. Civ.App.—Waco 1978, no writ); *Killebrew v. Bartlett,* 568 S.W.2d 915, 917 (Tex.Civ. App.—Amarillo 1978, no writ); *see also Butler v. Holt Machinery Co.,* 741 S.W.2d 169, 174 (Tex.App.—San Antonio 1987, writ denied) (listing late fees on payment coupons for installments which had not accrued does not constitute interest).

Only when, and to the extent that, the threatened interest is actually charged or assessed against the debtor has the usury statute been violated. *See Windhorst v. Adcock,* 547 S.W.2d 260 (Tex.1977); *Watson v. Cargill, Inc., Nutrena Division,* 573 S.W.2d 35, 42 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *see also Williams v. Back,* 624 S.W.2d 272, 276–77 (Tex.App.—Austin 1981, no writ) (statement of account

claimed a balance due which included an allegedly usurious interest charge).

■ Accordingly, the printed notations on Acetylene's invoices did not in themselves amount to a charging of usurious interest. Similarly, Acetylene's petition pleading for the recovery of interest of this action did not amount to a usurious charging of interest.

■ A pleading by itself, even if it contains a claim for usurious interest, does not constitute a "charge" of usurious interest for purposes of the Texas usury statute. *Sage Street Associates v. Northdale Const. Co.*, 863 S.W.2d 438, 440 (Tex.1993); *George A. Fuller Co. of Texas, Inc. v. Carpet Services, Inc.*, 823 S.W.2d 603 (Tex. 1992); *see also D & S Kingsway Ventures v. Texas Capital Bank–Richmond, N.A.*, 882 S.W.2d 573, 575 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Resolution Trust Corp. v. Ammons*, 836 S.W.2d 705, 711 (Tex.App.—Houston [1st Dist.] 1992, no writ). Noting the lack of legislative intent that the usury statute apply to pleadings, the Texas Supreme Court distinguished between the nature of a pleading as a demand to the court, and the nature of consumer and commercial credit transactions in which demand is made of the opposing party for payment. *George A. Fuller Co.*, 823 S.W.2d at 604–06.

We overrule Varel's first three points of error.

By its two cross-points, Acetylene complains that the trial court erred in failing to allow it to file a trial amendment asserting various affirmative defenses with regard to the one instance in which Acetylene did calculate the amount of a service charge and demand payment thereon. The April 30, 1991, monthly statements sent by Acetylene to Varel assesses a service charge of $28.09 on the balance of $1777.75 listed as more than 30 days overdue. The trial court considered this a usurious charge of interest and assessed a penalty against Acetylene of $355.55. *See*

TEX.REV.CIV. STAT. ANN. art. 5069–1.06(1) (Vernon 1987) (repealed).

The trial was conducted on April 3 & 4, 1997. On April 11, 1997, Acetylene filed its motion for leave to amend its petition to include the requested affirmative defenses to conform to the evidence presented at trial. The trial court, however, denied leave to amend.

■ Even after the trial has been concluded, the trial court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or the amendment asserts a new cause of action, and thus is prejudicial on its face, and the opposing party objects to it. *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex.1993); *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). Accordingly, the party opposing the amendment must timely object to its filing and the objection must be evidenced in the record. *See Smith Detective Agency & Nightwatch Service, Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 748 (Tex.App.—Dallas 1996, writ denied).

■ In the present case, the appellate record shows that Varel never objected to the motion for leave to amend. Varel did file a response to Acetylene's trial brief arguing that judgment should be granted in its favor, but Varel did not even in that response object specifically to the requested amendment or any of the affirmative defenses raised therein. Accordingly, the trial court had no basis to deny the motion and should have allowed leave to amend.

■ Acetylene further complains by its cross-points that its defense of limitations conclusively barred Varel's claim for usurious interest. Acetylene's amended answer to Varel's counterclaim for usurious interest raises, among other things, the defense of limitations. The usury statute provides that such claims must be brought within four years from the date when the usurious charge was received or collected. TEX. REV.CIV. STAT. ANN. art. 5069–1.06(3) (Ver-

non 1987) (repealed).[3] In the present case, the testimony at trial and the invoices and monthly statements conclusively show that Acetylene charged Varel the $28.09 finance charge on its April 30, 1991, statement, and that the full amount of the April bill was paid and credited to Varel's account by the time Acetylene sent to Varel the May 31, 1991, statement of account. Accordingly, the statute of limitations for a usury claim expired on May 31, 1995, more than a year before the present lawsuit was filed. We conclude that Acetylene was thus entitled to prevail on all of the usury claims, including the one on which the trial court incorrectly granted a judgment for Varel. We sustain Acetylene's two cross-points.

By its fourth point of error, Varel complains that it was entitled to reasonable attorney's fees under article 5069–1.06(2) for the prosecution of its usury claims against Acetylene. However, because we have determined that Varel was not entitled to prevail on any of its usury claims, we conclude that it was not entitled to attorney's fees for its prosecution of such claims. We overrule Varel's fourth point of error.

### POSSESSION OF THE CYLINDERS

By its fifth point of error, Varel challenges the legal and factual sufficiency of the evidence to show its possession of the 115 cylinders that Acetylene complains Varel converted. Specifically, Varel complains that Acetylene offered no direct evidence to show that it delivered the 115 cylinders in question to Varel or that Varel had not returned the cylinders.

In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). *See also* Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 TEX. L.REV. 361 (1960).

In order to prove possession, Acetylene showed through its president, Bert Wolf, the method by which it accounted for cylinders, and introduced statements and invoices from January 1992 to the end of 1995, when Varel stopped paying its monthly bill. Though the invoices and statements did not show when in the continuing course of business Acetylene had delivered the particular cylinders at issue, they did show a monthly balance of cylinders that had been delivered to Varel and remained in its possession. Acetylene offered these as business records, and Varel made no objection except to their use to prove the value of the individual cylinders. Wolf explained that over the years it had recorded the number of cylinders delivered to Varel and the number of empty cylinders picked up, and that the balance of cylinders remaining in Varel's possession was listed on the invoices and statements. Moreover, Wolf testified that, in addition to the driver's count of cylinders, Acetylene inventories its cylinders as they are delivered back and catches any mistakes its drivers make in the number of cylinders returned.

In addition, the invoices themselves contained the following warning to Varel:

PLEASE CHECK YOUR CYLINDER BALANCES TO SEE IF THEY AGREE WITH YOUR RECORDS. IF WE DON'T HEAR FROM YOU WITHIN 10 DAYS WE WILL ASSUME THIS COUNT IS CORRECT. NO REFUNDS AFTER 6 MONTHS FROM INVOICE DATE.

Varel complains that Acetylene produced no eyewitness to the cylinders delivered to Varel and those returned by Varel to Acetylene, nor did it produce the specific invoices or delivery tickets showing delivery of those particular cylinders. However, we conclude that the continuing balances reflected in the invoices and statements that were admitted into evi-

---

**3.** Now codified at TEX. FIN.CODE ANN. § 305.004 (Vernon 1998).

dence sufficiently supplied this information.

■ When admitted as business records, invoices and statements of account of this nature are an acceptable means of showing that the particular transactions reflected therein actually did take place. *See Texon Energy Corp. v. Dow Chemical Co.*, 733 S.W.2d 328, 330 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (monthly invoices showing party's share of drilling expenses); *Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 721–22 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (invoices and work tickets describing materials and services furnished and the labor performed were competent evidence to prove the order and delivery of such materials, services, and labor). The business record substitutes for the personal knowledge of a testifying witness, especially when it would be impossible or impractical to gather together all of the employees in the corporation who had personal knowledge of a complex and/or extended transaction involving many different employees separated by time and geography. *Id.*

Accordingly, the invoices and statements in the present case were some evidence that the 115 cylinders represented therein had been delivered to Varel and not returned to Acetylene. In addition, Varel's own payment and acquiescence also showed that the cylinders were in its possession.

■ It is well settled that any statement or conduct of a party which is inconsistent with the position taken by him at the trial may be given in evidence against him. *Wenk v. City Nat. Bank*, 613 S.W.2d 345, 349 (Tex.Civ.App.—Tyler 1981, no writ); 1A, RAY, TEXAS LAW OF EVIDENCE § 1121 (Texas Practice 3d ed.1980). Such statements and acts are not conclusive, but form a part of the evidence, and their weight and probative force are matters for the trier of the facts. *Wenk*, 613 S.W.2d at 349; *Esteve Cotton*

*Co. v. Hancock*, 539 S.W.2d 145, 157 (Tex. Civ.App.—Amarillo 1976, writ ref'd n.r.e.); RAY at §§ 1127–29. In *Wenk*, for instance, the Tyler Court held that an account holder's silence regarding monthly statements sent to him reflecting the current status of his account amounted to a tacit admission of the correctness of the statements. *Id.* at 349; *See* RAY at § 1153.

Similarly, in the present case, Varel continued to pay rent on the cylinders for some three years beyond the date that Varel claims it had returned those cylinders. Payment was not made under protest, nor did Varel challenge the admonitions in Acetylene's statements regarding cylinder balances. We conclude, therefore, that Varel's own conduct in continuing to pay the amounts billed amounted to a tacit admission that it had possession of the 115 cylinders in question. Accordingly, there was legally sufficient evidence to show that Varel had possession of the 115 cylinders that Acetylene claimed it had.

In addition, we conclude that there was factually sufficient evidence to show that Varel possessed the cylinders in question. Varel argued that it was able to discredit the invoices and statements by showing that the balances that Wolf claimed were always carried forward from the end of one month to the beginning of the next month did not always match. Varel also offered the testimony of its vice-president and two of its employees that it paid the invoices amounts billed by mistake, that it had returned all of Acetylene's cylinders, and that its employees had searched for and found only two cylinders with Acetylene's markings.

However, Acetylene also showed by its president and other witnesses that the alleged discrepancies could be accounted for in terms of its own accounting procedures that would conditionally credit a delivery and then later erase it if it did not go through. Such discrepancies, while they may go to the weight of the evidence, do not entirely discredit it. In addition, the trier of fact was entitled to weigh and

discredit testimony by Varel's officers and employees that they did not have the cylinders and that the rentals had been paid as a mistake.

We conclude that there remained factually sufficient evidence to show that Varel did not return 115 cylinders that had been delivered by Acetylene. We overrule Varel's fifth point of error.

By its seventeenth and eighteenth points of error, Varel complains that it was entitled to recover payments made on those cylinders and attorney's fees because the evidence showed that it did not have possession of the cylinders. In view of our conclusion that the evidence was sufficient to show that Varel did retain the 115 cylinders in question, we overrule its seventeenth and eighteenth points of error as well.

## DAMAGES

■■■ By its sixth and seventh points of error, Varel challenges the sufficiency of the evidence to support the damages awarded by the trial court for rental and conversion of the 115 cylinders. Specifically, Varel complains that the trial court's judgment inconsistently awarded rental value for all 115 cylinders, but with regard to the conversion claim allowed a credit of 21 cylinders that Varel claims it had disproved that it possessed. Varel further alleges that even the credit for the 21 cylinders was incorrectly calculated.

The trial court filed a letter briefly indicating its findings, among other things, that Acetylene was entitled to recovery "For cylinders not returned $32,905; For cylinder rent $12,276.25; For attorney's fees $14,900," "Less: 21 cylinders $4,809 [and] Usury Penalty $355.55." The trial court's letter findings, however, did not reveal why the twenty-one cylinders in question had been eliminated from the award for conversion but not for rentals.

Varel assumes the trial court found that these cylinders were returned to Acetylene and thus should have been deducted from the rental damages as well. However, the deduction was just as consistent with the trial court's implied finding that Acetylene had not proven the value of the 14 CO2 cylinders and 6 mix cylinders,[4] and was thus not entitled to conversion damages on those cylinders, though it would still be entitled to rental.

Whatever the trial court's reason for deducting twenty-one cylinders from its damage award for conversion, there was sufficient evidence to show that all 115 cylinders had been retained by Varel and to support an award of damages based on the retention of all 115 cylinders. We overrule Varel's sixth and seventh points of error.

By its eighth point of error, Varel complains that Acetylene was not entitled to recover conversion damages both for loss of use and fair market value. We agree that the trial court erroneously awarded to Acetylene both the rental value of the cylinders up through the date of trial and the fair market value of those cylinders. The problem in the present case arises from the uncertainty as to the date on which the conversion took place for purposes of valuation and assessment of damages.

■■■ Conversion is any distinct act of dominion wrongfully exerted over another person's personal property in denial of, or inconsistent with, that other person's right in the property, either permanently or for indefinite time. *Soto v. Sea–Road Intern., Inc.*, 942 S.W.2d 67, 72 (Tex. App.—Corpus Christi 1997, writ denied); *Dolenz v. National Bank of Texas at Fort Worth*, 649 S.W.2d 368, 370 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). Specifically, the failure to return bailment property at the end of the bailment period constitutes, in law, a conversion of the

---

**4.** By this calculation, the trial court would then be off by one cylinder. However, nei-

ther party complains in this regard.

bailment entitling the bailor to recover its value. *Soto*, 942 S.W.2d at 72; *Kirkland v. Mission Pipe & Supply Co.*, 182 S.W.2d 854, 855 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.).

A plaintiff who establishes conversion is entitled to either the return of the property and damages for loss of use during the tort-feasor's detention, or the value of the property. *Winkle Chevy–Olds–Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex.App.—Corpus Christi 1992, writ dism'd); *Southwind Aviation, Inc. v. Avendano*, 776 S.W.2d 734, 737 (Tex. App.—Corpus Christi 1989, writ denied). However, the plaintiff may not generally recover in conversion both for the market value of the property and for loss of use. *See First Nat. Bank of Missouri City v. Gittelman*, 788 S.W.2d 165, 169 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Southwind Aviation*, 776 S.W.2d at 737.

If the plaintiff elects to recover the value of the property, actual damages are determined by the fair market value at the place and time of conversion together with legal interest thereon. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex.1997); *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980); *Soto*, 942 S.W.2d at 74; *Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Development, Inc.*, 915 S.W.2d 61, 71 (Tex.App.—Corpus Christi 1996, writ denied).

Nevertheless, when the property is a bailment under lease, it stands to reason that, up until the date of conversion by the bailee, the property remains under lease and the bailor is entitled to recover rents on that property. *Jalco, Inc. v. Tool Traders, Inc.*, 535 S.W.2d 898, 902 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ); *see also Smith–Hamm, Inc. v. Equipment Connection*, 946 S.W.2d 458, 461 (Tex.App.—Houston [14th Dist.] 1997, no writ) (rents continued to accrue until certain stolen property had been paid for by the lessee).

In the present case, Acetylene was entitled to recover rental on the cylinders up until the date on which they were converted by Varel; thereafter, prejudgment interest compensates Acetylene for the time-value of the lost asset. *See Imperial Sugar Co.*, 604 S.W.2d at 74. We must, therefore, determine when Varel's conduct amounted to a conversion of the cylinders rather than merely a continuation of the bailment lease.

Because bailed property has been lawfully acquired by the bailee, the bailor must generally demand return of the property, and the bailee must refuse to redeliver, before a conversion takes place. *Presley v. Cooper*, 155 Tex. 168, 284 S.W.2d 138, 141 (1955); *Bures v. First Nat. Bank, Port Lavaca*, 806 S.W.2d 935, 938 (Tex.App.—Corpus Christi 1991, no writ). However, demand and refusal are not necessary if other evidence establishes an act of conversion, *i.e.*, any act of dominion by a bailee over the property inconsistent with, or adverse to, the bailor's right to the property. *Presley*, 284 S.W.2d at 141. Accordingly, demand for return is not required if it would have been useless or if the possessor's acts amount to a clear repudiation of the owner's rights. *Bures*, 806 S.W.2d at 938; *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Loomis v. Sharp*, 519 S.W.2d 955, 958 (Tex.Civ.App.—Texarkana 1975, writ dism'd w.o.j.). In *Jalco*, for instance, when rented equipment was lost by the bailee, the court considered a conversion to have taken place on the date that the bailor was notified of the loss. *Jalco*, 535 S.W.2d at 902.

In the present case, Varel stopped paying rent on the cylinders in October 1995. Wolf testified that Acetylene then called Varel to ask why it was late on the payment, and Varel then informed Acetylene that it did not have the cylinders and would not pay the bills. This amounted to

a repudiation of Acetylene's right to those cylinders in the same manner as the loss in *Jalco* deprived the rightful owner of possession and amounted to a conversion. The trial court, however, continued to allow Acetylene to claim rent on those cylinders to the date of trial. Acetylene would then claim the option to treat the cylinders as having been under rent until the date of trial, at which point it would establish a conversion. We disagree.

■ One exception to the general measure of conversion damages is instructive in the present case. The exception allows the plaintiff an option, when conversion was attended with fraud, willful wrong, or gross negligence, to determine fair market value at its highest rate over the period between the date of conversion and the date of filing suit. *Imperial Sugar Co.*, 604 S.W.2d at 74; *Miller v. Kendall*, 804 S.W.2d 933, 942 (Tex.App.—Houston [1st Dist.] 1990, no writ). Such an option gives an advantage to the plaintiff to maximize his damage award in order to punish especially egregious acts of conversion. Naturally, the plaintiff will calculate when he may secure the highest award based on a fluctuating market value and the rate of interest to be added from the chosen date until the time of trial.

■ However, where conversion is unmixed with fraud or other egregious conduct by the defendant, conversion damages are not subject to the whim of the plaintiff, and the courts are admonished not to unjustly enrich either the wrongdoer or the complaining party. *Deaton*, 939 S.W.2d at 147–48. Therefore, the bailor should not be allowed unilaterally to declare the date of conversion in order to maximize his own gain, where there is a date on which an act of conversion may be certainly fixed and there is no indication of fraud or egregious conduct by the bailee.

In the present case, we conclude that the act of conversion occurred when Varel stopped paying rent and denied possession of the cylinders in October 1995. Acety-lene was entitled to the rents collected before that date, but was not entitled to rents thereafter. Rather, Acetylene was entitled to the fair market value of the cylinders as of October 1995. Accordingly, we sustain Varel's eighth point of error.

Because we sustain Varel's eighth point of error and reverse the award of damages for rentals, we need not address its tenth point of error complaining of the sufficiency of the evidence to support the award. *See* Tex.R.App. P. 47.1.

■ We also summarily dispose of Varel's thirteenth point of error complaining that the statute of limitations bars Acetylene's claim for conversion. The statute of limitations for causes of action in conversion of personal property is two years. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.1999). When possession is initially lawful and there is no demand and unqualified refusal, a cause of action for conversion accrues upon the discovery of facts supporting the cause of action, or upon demand and refusal, whichever occurs first. *Nelson v. American Nat. Bank of Gonzales*, 921 S.W.2d 411, 415 (Tex.App.—Corpus Christi 1996, no writ); *Hofland v. Elgin–Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex.App.—Corpus Christi 1992, no writ). Varel argues that the conversion occurred when Acetylene failed to recover its cylinders thirty days after delivery, as was its right under the terms on the invoices. However, the conversion in this case occurred when Varel stopped paying rent on the cylinders and denied possession in October 1995. Acety-lene timely filed suit in June 1996 for conversion of the cylinders, well within the two-year statute of limitation. We overrule Varel's thirteenth point of error.

■ By its eleventh point of error, Varel complains that the evidence offered to prove conversion damages should have been automatically excluded as not having been properly disclosed in response to discovery requests. *See* Tex.R. Civ. P. 215(5). Specifically, Varel complains that the testi-

mony by Acetylene's president, Bert Wolf, concerning the fair market value of the cylinders should have been excluded because he had not been listed as an expert on such value.

At trial, Varel objected to a question asked during direct examination of Wolf concerning the value of the cylinders represented on the invoices. The objection was overruled, but Wolf did not thereafter during direct examination express his opinion concerning the value of the individual cylinders. Rather, the only testimony concerning value of the individual cylinders was elicited when Varel cross-examined Wolf, specifically asking for his opinion as to the value of each type of cylinder.

■ A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character. *Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.*, 966 S.W.2d 467, 473 (Tex.1998); *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex.1984).

■ Similarly, when a party elicits testimony from a witness, that party should not later be allowed to complain of the admission of an unfavorable answer. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987); *Blount v. Bordens, Inc.*, 892 S.W.2d 932, 945 (Tex. App.—Houston [1st Dist.] 1994), *rev'd on other grounds*, 910 S.W.2d 931 (Tex.1995). Accordingly, a party is not entitled to complain of responsive answers to questions that party asked the witness on cross-examination. *Cherry v. State*, 546 S.W.2d 922, 923 (Tex.Civ.App.—Dallas 1977, writ refused); *West v. Barnes*, 351 S.W.2d 615, 620 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.); *see also Snavely v. Snavely*, 445 S.W.2d 531, 532 (Tex.Civ.App.—Fort Worth 1969, no writ) (no error shown when testimony given in response to questions by appellant's attorney).

We conclude that Varel waived any complaint about Wolf's testimony concerning the value of the cylinders. We overrule Varel's eleventh point of error.

By its ninth point of error, Varel challenges the legal and factual sufficiency of the evidence to prove the fair market value of the cylinders at the time and place of conversion. As we explained earlier, conversion damages are determined by the fair market value at the place and time of conversion together with legal interest thereon. *United Mobile Networks*, 939 S.W.2d at 147–48; *Imperial Sugar Co.*, 604 S.W.2d at 74.

■ In the present case, Wolf testified to the value of each cylinder at the time of trial at $306 for the acetylene cylinders, $270 for the argon cylinders, and $229 for the hydrogen cylinders. Wolf also stated that the value of the cylinders had gone up since 1995. The only other testimony concerning the fair market value of the cylinders came from Acetylene vice-president Ernie Villarreal, who stated that the 80 acetylene cylinders are worth $300 each. The evidence offered was consistent with Acetylene's theory that the cylinders remained rented until trial, at which time they would be treated as having been converted.

However, this method of valuation is not consistent with this Court's understanding of conversion as we explained in regard to Varel's prior points complaining of double recovery. Because we conclude that the conversion occurred at the time that Varel stopped paying rent and denied possession of the cylinders, we hold that market value of the cylinders should have been shown as of that time. Wolf's own testimony shows that the value he placed on the cylinders at the time of trial was higher than their value in 1995, when the conversion occurred. Accordingly, there was no evidence of market value at the time of conversion and Varel is entitled to prevail on its no evidence point. We sustain Varel's ninth point of error.

**500**

Having sustained a no-evidence point of error on a necessary element of Acetylene's conversion claim, we would ordinarily render judgment against Acetylene. However, the appellate courts have broad discretion to remand for a new trial in the interest of justice where it appears that a party may have proceeded under the wrong legal theory. TEX.R.APP. P. 43.3(b); *see also Boyles v. Kerr,* 855 S.W.2d 593, 603 (Tex.1993) (applying prior Texas Rule of Appellate Procedure 180 specifically allowing only the Texas Supreme Court to remand in the interest of justice). In particular, we may remand for new trial when damages were improperly calculated by the plaintiff and the interest of justice requires that the plaintiff be given an opportunity to show the proper measure of his damages. *See Williams v. Gaines,* 943 S.W.2d 185, 193–94 (Tex. App.—Amarillo 1997, writ denied); *A.B.F. Freight Systems, Inc. v. Austrian Import Service, Inc.,* 798 S.W.2d 606, 616 (Tex. App.—Dallas 1990, writ denied); *Zion Missionary Baptist Church v. Pearson,* 695 S.W.2d 609, 613 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

In the present case, we conclude that the interest of justice would best be served by allowing Acetylene the opportunity to present evidence of the value of the cylinders at the time of the conversion in October 1995. Moreover, because liability on the conversion claim was contested, we may not order a new trial on damages alone, but must remand for a new trial on the conversion claim generally. *See* TEX. R.APP. P. 44.1(b).

We do not address Varel's remaining points of error concerning damages and attorney's fees, as they are not dispositive. *See* TEX.R.APP. P. 47.1.

We REVERSE the judgment of the trial court and REMAND this cause for a new trial consistent with this opinion.