TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00423-CV






Jeff Domizio, Frank Valenzuela and Maria Valenzuela, Appellants



v.



Progressive County Mutual Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 99-14902, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING







 Appellants Jeff Domizio, Frank Valenzuela, and Maria Valenzuela filed a lawsuit
against appellee Progressive County Mutual Insurance Company ("Progressive") in Travis County
district court, individually and on behalf of an alleged class, alleging that the late fees charged by
Progressive for untimely payment of automobile insurance policies constituted usurious charges of
interest. Alternatively, appellants allege that those charges were improper and unenforceable
liquidated damages constituting unjust enrichment. Progressive filed a counterclaim seeking a
declaration that the payment of insurance premiums in monthly installments does not involve a
lending transaction to which the usury statutes apply. Both parties filed motions for summary
judgment. The trial court, in granting summary judgment in favor of Progressive, found that
Progressive's installment payment plan was not a loan, financing, or any form of an extension of
credit to Progressive's policyholders and that the late fees Progressive charged its policyholders did
not constitute interest under the Texas usury statutes. We will affirm the judgment of the trial court.


FACTUAL AND PROCEDURAL BACKGROUND


 Appellants individually purchased Texas standard automobile policies from
Progressive and made premium payments consistent with an installment payment plan as authorized
by Manual Rule 14 of the Texas Automobile Rules and Rating Manual. Appellants, by agreement,
were charged service charges in accordance with Manual Rule 14. (1) In addition to this service charge,
Progressive assesses a six dollar late fee for each premium installment payment post marked later
than two days after the date on which the payment is due. Domizio was charged the six dollar late
fee on his $62.38 installment payment, and the Valenzuelas were also charged six dollars for late
payment of their $79.12 installment payment.

 Appellants filed this lawsuit as a prospective class action on behalf of all persons in
Texas who had been charged by and paid a late fee to Progressive in connection with installment
payment plans for automobile and motorcycle insurance policies issued by Progressive. Appellants
alleged that the late fees Progressive collected constituted usurious charges of interest. In addition,
appellants alleged that these late fees were improper and unenforceable liquidated damages. 
Appellants filed a motion for class certification, and both parties filed motions for summary
judgment. On April 11, 2000, the trial court declined to hear appellants' motion for class
certification and instead granted Progressive's motion to sever and abated the class action pending
a final, non-appealable adjudication of appellants' threshold legal question: whether the late fees
were usurious. On May 17, 2000, the trial court denied appellants' motion for summary judgment
and granted Progressive's motion for summary judgment. The trial court found that Progressive's
installment plan was not a loan, financing, or extension of credit, and that the late fees were not
usurious. Appellants appeal from the April 11 and May 17 orders.


DISCUSSION

Standard of Review

 To prevail on summary judgment, a plaintiff must conclusively establish all elements
of his cause of action as a matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clearcreek
Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979). On the other hand, a defendant who moves for
summary judgment must disprove at least one essential element of each of the plaintiff's theories of
recovery or conclusively establish each element of an affirmative defense. Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). We disregard all conflicts in the
evidence and accept the evidence favoring the nonmovant as true. Great Am. Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965); Kehler v. Eudaly, 933 S.W.2d 321,
324 (Tex. App.--Fort Worth 1996, writ denied). We indulge every reasonable inference from the
evidence in favor of the nonmovant and resolve any doubts in its favor. American Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

 When the parties file competing motions for summary judgment and one is granted
and the other denied, the reviewing court should review the summary-judgment evidence presented
by both sides and determine all questions presented. Commissioners Court v. Agan, 940 S.W.2d 77,
81 (Tex. 1997). This Court may reverse the judgment of the trial court and render such judgment
as the trial court should have rendered, including rendering judgment for the other movant. Jones
v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988).

 A party may also move for a "no-evidence" summary judgment. Tex. R. Civ. P.
166a(i). Such a motion asserts that there is no evidence of one or more essential elements of claims
upon which the opposing party would have the burden of proof at trial. Id.; McCombs v. Children's
Med. Ctr., 1 S.W.3d 256, 258 (Tex. App.--Texarkana 1999, no pet.). Unlike a movant for
traditional summary judgment, a movant for a no-evidence summary judgment does not bear the
burden of establishing a right to judgment by proving each claim or defense. McCombs, 1 S.W.3d
at 258. A no-evidence summary judgment is essentially a pretrial directed verdict, to which we apply
the same legal sufficiency standard of review. Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.
App.--Austin 1998, no pet.). A no-evidence summary judgment is properly granted if the
nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact
as to an essential element of a claim on which the nonmovant would have the burden of proof at trial. 
Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70-71.


Usury

 In their first issue on appeal, appellants complain that the trial court erred in finding
that the late fees assessed by Progressive did not constitute usurious interest. Specifically, appellants
argue that the six dollar late fee Progressive charged is interest because it is compensation for the
detention of money due. In addition, they argue that Progressive's installment plan involves an
extension of credit and is therefore subject to Texas's usury statutes. And finally, appellants contend
that they did not agree to pay the late fee and that the fee exceeds the maximum legal rate of interest
that can be charged, thereby subjecting Progressive to the penalty of forfeiture. (2)

 The essential elements of a usurious transaction are: (1) a loan of money, (2) an
absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than
allowed by law for the use of the money by the borrower. Holley v. Watts, 629 S.W.2d 694, 696
(Tex. 1982); Varel Mfg. Co. v. Acetylene Oxygen Co., 990 S.W.2d 486, 491 (Tex. App.--Corpus
Christi 1999, no pet.); Pentico v. Mad-Wayler, Inc., 964 S.W.2d 708, 714 (Tex. App.--Corpus
Christi 1998, pet. denied). Moreover, because usury statutes are penal in nature, they must be strictly
construed, and if there is any doubt as to legislative intent to punish the activity complained of under
usury statutes, the doubt must be construed in favor of the lender. Steves Sash & Door Co. v. Ceco
Corp., 751 S.W.2d 473, 476 (Tex. 1988); Hatzenbuehler v. Call, 894 S.W.2d 68, 69 (Tex.
App.--San Antonio 1995, writ denied). We will first address whether the late fees charged by
Progressive constitute interest.


 A. Interest

 The Texas Finance Code defines "interest" as the "compensation for the use,
forbearance, or detention of money." Tex. Fin. Code Ann. § 301.002(a)(4) (West Supp. 2001). 
Citing Varel Manufacturing, appellants state that "it is well-settled that late charges or late fees fall
within the statutory definition of interest." Varel Mfg., 990 S.W.2d at 490-91. Appellants argue that
the late charges fall into the category of "contingent additional charges" and are treated as interest
if and when a payment is received after the expiration of the grace period. Id. As a result, appellants
contend that the late fees were charges for the detention of money and therefore constitute interest. 
See Butler v. Holt Mach. Co., 741 S.W.2d 169, 173-74 (Tex. App.--San Antonio 1987, writ denied)
(holding that detention of money arises when debt has become due and debtor withholds payment
without new contract giving debtor right to do so). Appellants also contend that the statutory
definition of interest does not strictly require a lending transaction, but also can apply to any situation
where credit is extended. They argue that Progressive's business practice amounts to an extension
of credit to its customers. Appellants misconstrue the usury statute.

 The Texas Supreme Court has held that "it is a fundamental principle governing the
law of usury that it must be founded on a loan or forbearance of money; if neither of these elements
exist, there can be no usury." Crow v. Home Sav. Ass'n, 522 S.W.2d 457, 459 (Tex. 1975). Our
usury statutes are derived from the Texas Constitution, which provides the following grant of
authority to the legislature: "The legislature shall have authority to classify loans and lenders,
license and regulate lenders, define interest and fix maximum rates of interest." Tex. Const. art.
XVI, § 11 (emphasis added). It is apparent from the language of the provision that it was drawn to
govern only lending and credit transactions. See Sage St. Assocs. v. Northdale Constr. Co., 863
S.W.2d 438, 440 (Tex. 1993).

 Pursuant to this grant of authority, the legislature has enacted a statute addressing
maximum rates of interest, which includes a definition of "interest." See Tex. Fin. Code Ann.
§ 301.002(a)(4). Therefore, for the usury laws to apply, there must be an overcharge by a lender for
the use, forbearance, or detention of the lender's money. Solomon v. Briones, 805 S.W.2d 916, 917
(Tex. App.--San Antonio 1991, writ denied).

 The "use" of money referred to in the Finance Code is that which is contracted for
when a loan is made. Tygrett v. University Gardens Homeowners' Ass'n, 687 S.W.2d 481, 483
(Tex. App.--Dallas 1985, writ ref'd n.r.e.) (citing Parks v. Lubbock, 51 S.W. 322, 323 (Tex. 1899)). 
"Forbearance" occurs when a debt is due or to become due, and the parties agree to extend the time
for the payment of the debt. Id. Appellants concede the point that there was no use or forbearance
within the meaning of the usury statute. Clearly Progressive did not transfer any funds to appellants
for their use, and therefore no agreement for the extension of time of payment could exist. 
Appellants' contention instead is that the late fees were charges for the detention of money owed
(premiums owed) and therefore constituted interest.

 The "detention of money," within the meaning of the usury statute, arises when a debt
has become due and the debtor has withheld payment without a new contract giving him the right
to do so. Id. Because usury must be founded on an overcharge by a lender for the use, forbearance,
or detention of the lender's money, the definition of "detention" necessarily requires a lending
transaction between the parties. Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 489
(Tex. 1979); Crow, 522 S.W.2d at 459; Tygrett, 687 S.W.2d at 483. Thus, if at all, Progressive can
be held to have overcharged appellants for the detention of money only if appellants detained
Progressive's money. That is to say, due to a previous lending transaction between the parties, a debt
owed by appellants to Progressive must have become due and appellants must have withheld
payment without having a contractual right to do so. In the present case, the evidence reflects that
no such lending relationship existed between Progressive and appellants. Furthermore, there was
no obligation imposed upon the appellants to make a payment.

 The events here are typical of those in the world of insurance; however, this is not
what the usury statutes were designed to prohibit. In those instances where an installment payment
plan is desired, an initial payment is made by an insured who obtains coverage for a designated
period of time. At the end of that designated period, the next payment becomes due for an additional
period of time, if the policy is to be continued. At all times, the insured is in control of the process. 
If the insured desires coverage for an additional period of time, then payment is made. There is no
obligation imposed upon the insured; one simply pays for the coverage that one desires. Non-payment of the premium will result in a lapse of the policy. Thus, there is no "debt" owed and there
is no "debtor." Therefore, there is no "detention" of money within the meaning of the usury statutes. 
That being the case, there is no interest involved. While late fees might result from untimely
payment of installments, they cannot, for the reasons stated, be considered interest.

 Viewing the transaction at issue here through the lens of a narrow construction of the
usury statute, we cannot say that this is "the abusive practice in consumer and commercial credit
transactions" which the usury statutes are designed to correct. Sage St., 863 S.W.2d at 440. We
therefore hold that this was not a detention of money and that the late fees charged by Progressive
did not constitute interest.


 B. Extension of Credit

 Appellants further argue that Progressive's installment plan is an extension of credit
thereby subjecting it to the usury statutes. Appellants contend that an extension of credit is a
necessary element of all installment transactions. In their brief, appellants state that "Progressive's
installment plan is the equivalent of an account whereby a good or service is purchased up front and
paid for over time. It is an account as well as a contract ascertaining the amount payable without an
agreement to pay a specific rate of interest." Therefore, appellants argue, such a transaction is
governed by the Texas usury statutes. Moreover, appellants contend that Progressive extended credit
to Domizio by providing him with insurance prior to receiving a payment. Additionally, appellants
argue that Progressive extended credit by continuing to provide coverage beyond that period which
was obtained by the initial payment. (3)

 Progressive argues that it requires the premiums be paid in advance of receiving
coverage and that it only receives and retains payment for premium amounts which are fully earned. 
If for any reason, including nonpayment of the premium, one of Progressive's policies is canceled,
the policyholder is refunded, or not charged, the unearned portion of the premium. Progressive
maintains that Domizio's policy was cancelled for nonpayment of his premium and he was not
charged for the unearned premium.

 The trial court, in granting Progressive's motion for summary judgment, relied on
Potomac Leasing Co. v. Housing Authority of the City of El Paso, 743 S.W.2d 712 (Tex. App.--El
Paso 1988, writ denied). The court of appeals in Potomac Leasing held that the charging of
excessive interest, which constitutes usury in a credit transaction, does not apply in a lease or rental
transaction. Id. at 713. The court in Potomac Leasing reasoned that under the normal lease
agreement, the first payment is made when the equipment or property is delivered. Monthly
payments extend the lease and the right to possession of the item under lease. The normal loan
transaction involves credit, and in an open account transaction, credit is extended from the date of
purchase to the date of payment. A violation of the usury statute in those cases results from a credit
transaction. That is not the case under a bona fide lease agreement. Id.

 In the present case, Progressive contends that its installment payment plan is closely
analogous to a rental or lease transaction, which transaction the court in Potomac Leasing found not
to be usurious. See id. Progressive argues, and we agree, that its policyholders make an initial
payment prior to the inception of coverage and then make subsequent payments to continue
coverage. The policyholder does not have a continuing obligation to make the payment over the
term of the policy coverage; if he ceases payment, his coverage will be terminated. This is different
from a rental or lease transaction where the lessee is obligated to continue paying rent over the term
of the lease. The Progressive policyholder has no continuing obligation; the policyholder can cancel
the policy at any time and is required to pay only what Progressive has earned as of the date of the
cancellation. Therefore, we conclude that Progressive's installment payment plan was not an
extension of credit. To the extent that appellants may have received days of coverage without having
made the necessary payment, under the circumstances we consider that fact to be de minimis. A
contrary approach would be entirely inconsistent with sound public policy and at odds with existing
law. (4)

 In the alternative, appellants argue that there is at least an issue of material fact as to
whether Progressive extended credit to its policyholders. However, we conclude that Progressive
has established as a matter of law that it did not extend credit to its policyholders. We overrule
appellants' first two issues.


Liquidated Damages

 In their third issue, appellants argue that "[t]he trial court erred in granting
Progressive's motion for summary judgment on Appellants' claim that the late charges constitute
unenforceable liquidated damages because the claim is a viable cause of action and the trial court
failed to afford Appellants an opportunity to amend to sufficiently state their claim." In their third
amended petition, appellants added an additional cause of action alleging that the late fees
constituted unenforceable liquidated damages because the fees bore no relationship to any losses
Progressive suffered. Progressive specially excepted claiming that this count failed to state a cause
of action for which the trial court could grant relief. Progressive filed a no-evidence motion for
summary judgment stating that appellants had "no cause of action for 'recovery of improper late
charges.'" After a careful review of appellants' responses to Progressive's motion for summary
judgment and appellants' own motion for summary judgment, we conclude that appellants failed to
marshal a scintilla of probative evidence to raise a genuine issue of material fact as to this alleged
cause of action for which appellants would have the burden of proof at trial. See Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). The burden of proving whether a
liquidated damage is a penalty is upon the party seeking to invalidate the clause. Baker v.
International Record Syndicate, Inc., 812 S.W.2d 53, 55 (Tex. App.--Dallas 1991, no writ). 
Progressive argues in its brief on appeal that no such cause of action exists as affirmative relief. 
Because we have concluded that appellants failed to meet their summary judgment burden, we need
not address Progressive's argument. Appellants' third issue is overruled.


Breach of Contract and Unjust Enrichment

 Appellants complain in their fourth issue that the trial court erred in rendering
judgment on their breach of contract and unjust enrichment claims contained in their fourth amended
petition. Appellants filed their fourth amended petition on May 4, the day of the summary-judgment
hearing, asserting for the first time breach of contract and unjust enrichment claims. Similarly,
Progressive filed its plea in abatement and amended answer on that same day. The trial court's order
granting Progressive's summary judgment and denying appellants' states that it examined only "the
pleadings timely filed, the motions for summary judgment, the response filed by the Plaintiffs, the
summary judgement evidence admitted for consideration, and the applicable case law." (Emphasis
added.) Nowhere in the trial court's order does it appear that it considered Progressive's plea in
abatement and amended answer or appellants' fourth amended petition. The order specifically found
that Progressive's installment payment plan was not a loan, financing, or any other form of an
extension of credit and that the late fees did not constitute interest under the Texas usury statutes.

 Rule 63 of the Texas Rules of Civil Procedure states that "parties may amend their
pleadings . . . provided, that any pleadings, responses or pleas offered for filing within seven days
of the date of trial or thereafter, . . . shall be filed only after leave of the judge is obtained." Tex. R.
Civ. P. 63. A summary-judgment hearing is a trial within the meaning of Rule 63. Goswami v.
Metropolitan Sav. & Loan Ass'n, 751 S.W.2d 487, 490 (Tex. 1988); West Tex. Gas, Inc. v. 297 Gas
Co., 864 S.W.2d 681, 685 (Tex. App.--Amarillo 1993, no writ). Although this Court may presume
that an amended pleading, filed late but before the summary-judgment hearing, was considered by
the trial court if the record is silent as to any basis to conclude it was not considered, Goswami, 751
S.W.2d at 490, that is not the case here. Having determined that appellants failed to request leave
from the trial judge to amend their pleadings, we conclude that their fourth amended petition was
not timely filed. Therefore, we overrule appellants' fourth issue on appeal.


Class Certification

 In their fifth issue, appellants argue that the trial court abused its discretion in
severing the class claims and abating those claims until there was a final, non-appealable
adjudication of the usury questions. There is no right to bring a lawsuit as a class action. Vinson v.
Texas Commerce Bank-Houston, N.A., 880 S.W.2d 820, 824 (Tex. App.--Dallas 1994, no writ). 
The trial court may certify a class action if the plaintiff satisfies the requirements of Rule 42(a), see
Tex. R. Civ. P. 42 (a); however, Texas law does not require that a trial court certify a class upon the
determination that the facts sufficiently satisfy Rule 42(a). Vinson, 880 S.W.2d at 824. The grant
or denial of class certification will be upheld on appeal so long as the trial court acted rationally in
the exercise of its discretion. Id. Even if certification would have been proper, a denial may still not
be an abuse of discretion. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985); Vinson, 880 S.W.2d at 824.

 A trial court's decision to grant a severance will not be reversed unless the court has
abused its discretion. Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996). 
Similarly, a trial court has the discretion to abate an action so that claims may be presented in an
orderly fashion. Dolenz v. Continental Nat'l Bank, 620 S.W.2d 572, 575 (Tex. 1981). A trial court
abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to
any guiding rules or principles. Downer, 701 S.W.2d at 241-42. This Court may not reverse for an
abuse of discretion merely because we disagree with the decision of the trial court. Id. at 242.

 In order to show the trial court abused its discretion, appellants must demonstrate that
the undisputed evidence negates any valid rationale by which the trial court could have denied class
certification. Vinson, 880 S.W.2d at 825. We have previously concluded that the late fees
Progressive charged its policyholders for untimely payments are not interest and therefore not subject
to the usury statutes. Therefore, we conclude that a class action in the instant case was not
necessarily superior to other methods of adjudication. See id. Because resolution of the threshold
issue, whether the late fees constitute interest and are usurious, defeats the rights of the plaintiffs to
bring this lawsuit, the interest of sound judicial economy dictates that the resolution be reached
before the effort and expense of class certification and notification are undertaken. See id. (holding
that questions of manageability, litigation expense, and judicial economy are relevant to class
actions). As a result, there is no justiciable controversy meriting class certification. The trial court
did not abuse its discretion in severing and abating appellants' claims. Appellants' fifth issue is
overruled.


Progressive's Counterclaim for Declaratory Judgment

 In their final issue, appellants complain that the trial court erred in granting summary
judgment on Progressive's counterclaim for declaratory relief because the counterclaim itself failed
to assert a claim for affirmative relief. See Howell v. Mauzy, 899 S.W.2d 690, 706 (Tex.
App.--Austin 1994, writ denied). Progressive filed a motion for summary judgment on appellants'
causes of action and on its counterclaim for declaratory judgment. Because we have concluded that
the trial court properly granted Progressive's motion for summary judgment on appellants' causes
of action, we need not address whether Progressive's counterclaim for declaratory judgment was
improper. Moreover, the issues appellants raise on appeal all complain that the trial court erred in
granting Progressive's motion for summary judgment; none of the issues, save the final issue,
complain that the trial court based its decision on Progressive's counterclaim. Therefore, appellants'
final issue is overruled.


CONCLUSION Having concluded that the late fees charged by Progressive are not interest and
therefore not subject to the usury statutes and having overruled all of appellants' issues on appeal,
we affirm the judgment of the trial court.



 

 David Puryear, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: August 30, 2001

Publish

1. Manual Rule 14(A)(6) provides, "An insurer which provides the installment plan itself or
through an affiliate may charge a monthly service charge of no more than $3.00 for providing the
installment payment plan. The monthly service charge may be increased by $0.50 for each $250 by
fraction thereof by which the annual premium exceeds $500."
2. See Tex. Fin. Code Ann. §§ 305.001-.003 (West. Supp. 2001). Appellants' causes of action
accrued in 1998. In 1999, the legislature amended these sections of the Finance Code; however, for
our purposes here, these changes do not affect the substance of the opinion. Therefore, as a matter
of convenience, we will cite to the current statute.
3. Appellants contend that the inception date of Domizio's policy was March 2, 1999, but that
he did not pay the down payment of his premium until March 15, 1999. Appellants also assert that
Progressive continued coverage for almost a month beyond the time for which Domizio's payment
provided.
4. See Tex. Ins. Code Ann. art. 21.49-2B, § 4(g) (West Supp. 2001). Cancellation of a policy may
not take effect until the tenth day after the date the insurer mails notice of the cancellation to the
insured.