Don McADEN, Appellant,

v.

SOIL IMPROVEMENT CORPORATION,
Appellee.

No. 7664.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 28, 1965.

Robert G. Bush, III, Homer R. Caston, Jr., Nance & Caston, Sherman, for appellant.

Franklin R. Roark, Jr., Robinson & Roark, Sherman, for appellee.

DAVIS, Justice.

Plaintiff-appellee, Soil Improvement Corporation, sued defendant-appellant, Don McAden, individually, for actual damages, exemplary damages, and attorney's fees because of an alleged wrongful levy of an Alias Execution by the Sheriff's office of Grayson County on part of a carload of fertilizer alleged to belong to Soil Improvement Corporation. The levy was made on September 28, 1963. The fertilizer, at that time, was in the name of *Dave*

Tinkle, consignee. The Alias Execution was issued on a judgment in favor of Don McAden Company, a Corporation, against David Tinkle. The judgment was signed and entered on November 11, 1961, for the sum of $1,662.40, plus 6% interest, and costs of suit.

The jury answered the Special Issues, as submitted, in favor of Soil Improvement Corporation. Don McAden excepted and has perfected his appeal. He brings forward 25 points of error. The parties will be referred to as they were in the trial court.

In August of 1963, Soil Improvement Corporation was organized as a private corporation by Don W. Hefton, with David Tinkle as President, Leota Tinkle, his wife, as Vice President, and Don. W. Hefton as Secretary-Treasurer.

Prior to September 14, 1963, David Tinkle, by telephone, ordered a carload of fertilizer from Monsanto Chemical Company of El Dorado, Arkansas. Tinkle was advised by Monsanto Chemical Company that the fertilizer would have to be shipped through a distributor and it suggested the Farmers Fertilizer Company of Texarkana, Texas. The fertilizer was shipped by train on September 14, 1963, to "Don McAden Proprietorship", consignee. McAden got in touch with an agent of Monsanto Chemical Company and advised said agent that he did not order a car of fertilizer. Then, Monsanto Chemical Company, through Farmers Fertilizer Company, advised the railroad company to change the consignee from "Don McAden Proprietorship" to *Dave* Tinkle. The change was made and David Tinkle was advised that the car of fertilizer had reached Sherman. Subsequently, some of the employees of the Don McAden Company observed David Tinkle unloading fertilizer out of the railroad car and advised McAden. McAden in turn advised his lawyer. The lawyer made an investigation which revealed that the car of fertilizer was in the name of *Dave* Tinkle, consignee; *Dave* Tinkle being one and the same person as David Tinkle. The lawyer secured the

issuance of an Alias Execution on the Judgment in favor of Don McAden Company, a corporation. The Alias Execution was placed in the hands of the Sheriff's office, which made a levy on 19 tons of fertilizer. Everything indicated that David Tinkle was the owner of the fertilizer at that time.

Immediately after the levy was made, Monsanto Chemical Company and Farmers Fertilizer Company were advised of the same. Then, Monsanto Chemical Company and Farmers Fertilizer Company began the process of changing the name of the consignee from *Dave* Tinkle to Soil Improvement Corporation. This was done about one month after the levy was made.

In the trial of the case, Tinkle testified that he told the Deputy Sheriff that the fertilizer belonged to Soil Improvement Corporation at the time the levy was made. This testimony was denied by all other witnesses. One of them testified that Tinkle told them that the fertilizer belonged to Monsanto Chemical Company. Tinkle testified, by deposition, that he told the Deputy Sheriff that the fertilizer belonged to Monsanto Chemical Company. Harold Trammel, President of Farmers Fertilizer Company, testified, very positively, that the name of the consignee would show the owner of the fertilizer at the time the levy was made. He knew that the fertilizer was in the name of *Dave* Tinkle, consignee. He testified that Tinkle was the owner of the fertilizer at the time the levy was made. After he had testified, the plaintiff made a motion to take a nonsuit. The trial court overruled the motion.

The defendant filed a motion for instructed verdict and a motion for judgment N.O.V. The trial court entered a judgment in favor of the plaintiff for $1,715.00, including $100.00 as loss of profits.

Before we start discussing the points of error, we will say that we have tried to determine whether or not the property involved was "wrongfully" levied upon, and

whether or not the proper measure of damages were submitted to the jury, along with the other errors complained of.

■ By his point 1, defendant says the trial court erred in overruling his plea in abatement because the Sheriff's Department was a necessary and indispensable party to the suit. This is on the theory that all joint tort feasors should be joined as defendants by plaintiff. Riley v. Industrial Finance Service Company, 157 Tex. 306, 302 S.W.2d 652 (1957). This decision follows the case of Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952), where the Supreme Court held that where two or more wrongdoers joined to produce an indivisible injury, all of the wrongdoers are jointly and severally liable to the person wronged for the entire damage suffered. The court went on to hold that a plaintiff may sue one or more of the tort feasors. Then it held that if all of the tort feasors are not joined as defendants, then the defendants may bring in the others. The point is overruled.

■ By his point 2, defendant says the trial court erred in overruling his motion for continuance because of the absence of his main counsel, Homer Caston, Jr. According to the record, Caston was defendant's main counsel. He had taken the depositions in El Dorado, Arkansas, and in Sherman. At the time the case was called for trial, Caston was in the U.S. Army, where he would be for another two weeks. The trial court overruled the motion and forced the defendant to go to trial and be represented by an inexperienced attorney. The record further shows that the plaintiff, by oral motion, had recently had the case passed for two weeks without giving any particular grounds therefor. It seems that a good cause was shown to pass the case for two weeks, and that such a continuance would not have resulted in any injury to the plaintiff. Rule 253, Vernon's Texas Rules of Civil Procedure. The point is sustained.

■ By his points 3 through 7, defendant complains of the error of the trial court in overruling some of his exceptions to the plaintiff's First Amended Original Petition. Since the case was tried on the wrong theory of law, we will sustain these points. The execution was issued in the name of Don McAden Company. According to the evidence, the property was in the name of *Dave* Tinkle, consignee. There was a valid judgment in favor of the creditor against the judgment debtor. Another thing, if the execution had been wrongfully levied the damages would be governed by the actual value of the property at the time the levy was made. Ainsa et al. v. Moses et al. (Tex.Civ.App.), 100 S.W. 791 (1907), N.W. H.; Wollner et al. v. Darnell (Tex.Civ. App.), 94 S.W.2d 1225 (1936), N.W.H. That does not mean the probable retail value. There are many cases to this effect. See: "COMMENT" Creditor's Liability in Texas for Wrongful Attachment, Garnishment, or Execution, 41, No. 5, Texas Law Review 692–716, and cases cited therein.

■ By their points 8, 18 and 19, defendants say the trial court erred in overruling his objections to the judgment in favor of the plaintiff and against Don McAden, individually; and erred in overruling defendant's objections to the judgment in that the evidence failed to show that the levy of the execution by the Sheriff's Department and Don McAden Company was wrongful; and that Don McAden Company and the Sheriff's Department acted with anything other than reasonable and probable cause in making said levy. The Alias Execution that was issued was issued in favor of Don McAden Company, not in favor of Don McAden, individually. Since the judgment was in favor of the corporation, the corporation was a necessary and indispensable party to the suit. Royal Petroleum Corp. v. Dennis, 160 Tex. 392, 332 S.W.2d 313 (1960); Hortenstine v. Jackson (Tex.Civ. App.), 289 S.W.2d 613 (1956), W.R., N.R.E. The points are sustained.

Defendant takes the position that the plaintiff could have filed a bond and oath in which it could have alleged that the fertilizer belonged to plaintiff. Then, they could have had a trial to the right of the property. Art. 291, Vernon's Ann.Tex.Civ. St. and Art. 7402, Vernon's Ann.Tex.Civ. St.

24 T.J.2d 658, Sec. 196, says:

" * * * In order that there may be a recovery of damages that result from an unlawful levy of execution on the property of an innocent third party, the injured party must establish that it is he and not the judgment debtor who owns the property."

The evidence is quite conflicting as to who was the owner of the fertilizer at the time the levy was made.

 By his point 9, defendant says the trial court erred in overruling his exceptions and objections to the court's charge because of his failure to submit certain requested special issues. A defendant has a right to an affirmative presentation of any facts properly raised as a defense that, if true, would establish the defense. 57 T.J.2d 190, Sec. 493, and the authorities cited therein.

We will not discuss all of the special issues, but we will say that there are at least two that should have been presented. One of them is as to who was the owner of the property at the time the levy was made. The other one is as to whether or not the levy of the execution was wrongfully made. There is some doubt as to the value of the property that was levied upon. The plaintiff took the position that there was 19.8 tons in the car that was levied upon by the Sheriff's office. There is positive evidence by the Sheriff's office that it only levied upon 19 tons. A special issue should be submitted to inquire as to the actual tons of fertilizer that was levied upon; then, inquire as to its value.

It is doubtful that any loss of profits could be recovered in this case, as well as any attorneys' fees. In the event the plaintiff should be entitled to recover attorneys' fees it will be necessary to prove what a reasonable attorneys' fee would be. That proof must be made by a lawyer or lawyers that are acquainted with the facts in the case. In a trial of this case the only testimony shown was what the owner of the corporation who swore that he had agreed to pay said attorney. In a case like this, such proof is not sufficient.

It is the opinion of the court that under the laws of Texas the plaintiff can recover only the amount of the value of the property that was levied upon at the time of the levy. Since the Alias Execution was issued in the name of Don McAden Company, a corporation, the corporation is a necessary and indispensable party in this suit and the plaintiff will have to amend his pleadings and sue the corporation. There are some other errors that have been complained of, but since the case has to be reversed and be re-plead, we will overrule them for the sake of the record.

The judgment of the trial court is reversed and remanded.