**Louva HUNT, Appellant,**

v.

**Miles Edward BALDWIN, Irene Baldwin, William J. Rohrbach, Jr., and Sullins, Johnston, Rohrbach & Magers, P.C., Appellees.**

**No. 14–99–00579–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 2, 2001.

Publication Ordered Sept. 6, 2001.

John Joseph Hardig, Houston, for appellants.

Robin Morris Green, Lubbock, Jack W. Tucker, Jr., Houston, Kent Frank Brooks, Dallas, for appellees.

Panel consists of ANDERSON, HUDSON, and SEYMORE, JJ.

## OPINION

SEYMORE, Justice.

Appellant, Louva Hunt, appeals the judgment entered in favor of appellees, Miles Edward Baldwin, Irene Baldwin, William J. Rohrbach, Jr., and Sullins, Johnston, Rohrbach & Magers, P.C. We affirm.

### I. BACKGROUND

Hunt and her former husband, James R. Lovell, executed and delivered to Chester Wilkey, Fern Wilkey, Lyndal Wilkey, and Mildred Wilkey, two promissory notes in the original principal sums of $160,100 and $400,000. Ed and Irene Baldwin acquired the notes, which were secured by real estate located in Moore County, Sherman County, and Dallam County, Texas, from the Wilkeys in a sale and exchange agreement. Hunt and Lovell sold the property, which secured the notes, to Melroe Farms, Inc., a corporation owned by Irving L. Melroe and Edward H. Melroe. The Melroes guaranteed to pay and assumed the unpaid balances on the notes. The Melroes ultimately defaulted on the notes.

On March 7, 1983, the Baldwins sued Hunt, Lovell, and the Melroes in the United States District Court for the Northern District Court of Texas, Amarillo Division for collection of the notes. A final judgment in that case was entered on March 15, 1985 (the "1985 judgment"), awarding the Baldwins $698,723.09 against Hunt, Lovell, and the Melroes, jointly and severally. The judgment, however, further provided:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that while JAMES R. LOVELL and wife, LOUVA H. LOVELL, are jointly and severally liable to the Plaintiffs for the full amount of such judgment mentioned above, they are, however, entitled to full indemnity from Defendants IRVING L. MELROE and EDWARD H. MELROE for the total amount of such judgment, together with interest accumulating thereon and all other costs of suit.

In June 1985, Irving Melroe filed bankruptcy in Colorado. The Baldwins filed a proof of claim in the Melroe bankruptcy proceeding based on the 1985 judgment. Hunt, however, did not file a claim for indemnity in the Melroe bankruptcy under the 1985 judgment. The Baldwins and the Irving Melroe bankruptcy estate entered into a settlement agreement in which the Baldwins acquired an interest in the Michigan–Chestnut Partnership for $25,000. Hunt alleges the Michigan–Chestnut interest was valued at $500,000 to $1,000,000, and the Baldwins ultimately received several hundred thousand dollars in payments from the Michigan–Chestnut interest, which, according to Hunt, are more than sufficient to satisfy the 1985 judgment.

On December 7, 1989, Lovell filed bankruptcy in the United States Bankruptcy Court for the Northern District of Texas,

Amarillo Division. Although the Baldwins filed a claim in the Lovell bankruptcy proceeding, they did not file any objections to Lovell's discharge. On April 17, 1990, Lovell received a discharge of all indebtedness, including the 1985 judgment.

After the Melroes and Lovell were discharged in bankruptcy, Hunt was the only remaining defendant liable on the 1985 judgment. To keep the 1985 judgment from going dormant, the Baldwins wrote William Rohrbach, on September 11, 1994, and requested issuance of a writ of execution against Hunt. On January 24, 1995, Rohrbach signed an affidavit and request for issuance of writ of execution against Hunt, which he filed with the clerk of the United States District Court in Amarillo. On January 27, 1995, pursuant to the affidavit and request for issuance of writ of execution, the clerk of the federal court issued the writ of execution. Rorhbach forwarded the writ of execution to the Sheriff of Donley County, Texas. On March 4, 1995, the sheriff served the writ of execution on Hunt. Pursuant to the writ, two heifers were seized and sold, with the Baldwins ultimately receiving the proceeds of the sale.

The amount of the original judgment as stated in the affidavit, request for issuance of the writ of execution, and the writ of execution was incorrect because credits for payments previously made on the judgment were not reflected. Another lawyer in Rohrbach's firm had been handling the Baldwin's claim in the Lovell bankruptcy proceeding. Although the Baldwins had informed the other attorney that payments had been made on the 1985 judgment, Rohrbach was not aware of those pay-

ments when he signed the affidavit and requested the writ of execution.

Hunt sued the Baldwins, Rohrbach, and the Sullins, Johnston, Rohrbach & Magers lawfirm, asserting claims for abuse of process, conversion, fraud, intentional infliction of emotional distress, money had and received, wrongful execution, common law and statutory usury, attorney's fees for usury, and conspiracy. Hunt also sought a declaratory judgment for all amounts owed to Hunt as a result of all appellees' collection efforts; alternatively, Hunt sought a declaratory judgment for the amount, if any, that remained unpaid on the 1985 judgment. Hunt also sought attorney's fees under the Declaratory Judgments Act.

The trial court granted a directed verdict in favor of appellees on Hunt's claims for usury, abuse of process, wrongful execution, conversion, money had and received, fraud, and conspiracy. Also, the trial court submitted Hunt's claim for intentional infliction of emotional distress to the jury, which found against Hunt on that claim.[1] With regard to Hunt's declaratory judgment action, the trial court determined that Hunt was entitled to $189,255.21 in credits on the 1985 judgment.[2] Although the trial court submitted a question on reasonable and necessary attorney's fees under the Uniform Declaratory Judgment Act, the jury found Hunt was not entitled to any attorney's fees.[3]

## II. First Issue

■ In her first issue, Hunt claims the evidence is legally and factually insufficient to support the "trial court's granting of appellees' affirmative defenses of res

---

1. Hunt does not appeal the jury's finding on intentional infliction of emotional distress.

2. At trial, appellees did not dispute that Hunt was entitled to credits on the judgment.

3. The Baldwins and Rohrbach cross-sued each other for contribution, but nonsuited their claims.

judicata and collateral estoppel" with respect to the Michigan Chestnut and Cogswell & Wherle [4] collections. Although it is not entirely clear, we interpret Hunt's complaint as challenging the trial court's granting a *directed verdict* on those affirmative defenses. Hunt bases her assertion that the trial court granted a directed verdict on the following exchange between the trial court and her trial counsel, which occurred well into the trial:

> MR. STEVENSON (Counsel for Hunt): Your Honor, as we started the trial, we had a lengthy motion in limine that was heard by the Court, *specifically on the Baldwins' motion in limine and more particularly with respect to Items 1 and 2 concerning the Michigan–Chestnut Partnership Interests, the values associated therewith,* and the defendants' argument in the case that somehow res judicata or collateral estoppel would preclude us from making any mention of the Michigan–Chestnut Partnership, the evaluation thereof or the circumstances surrounding the acquisition of that partnership in Denver. As *I understood the Court's ruling in the motion in limine,* the Court has ruled that we are not to mention anything other than essentially the $25,000 value and the other items that came out of the distributions in the

bankruptcy; except for the valuation of the Michigan–Chestnut Partnership and any amounts that were ultimately acquired as a result of that interest. Do I understand the Court's ruling correctly?
> THE COURT: That's correct.[5]

While the above quoted dialogue between Hunt's trial counsel and the trial court refers to res judicata and collateral estoppel, its emphasis is clarification of the trial court's ruling on the Baldwin's motion in limine, which sought to exclude such matters because they were "irrelevant, prejudicial or incompetent to the material issues in this cause." [6] Moreover, Hunt has not shown where in the record the trial court granted a directed verdict on any of the Baldwins' affirmative defenses by either oral or written order. While it appears from counsel's statement that there might have been some sort of discussion of the Baldwins' affirmative defenses of res judicata and collateral estoppel in a pretrial hearing, we have no record of it. Further review of the record establishes that when Hunt attempted to introduce evidence pertaining to the value and amount of collections from the Michigan–Chestnut interest, the trial court sustained the Baldwins' objection based on relevance. Hunt has not shown that the trial court granted a directed verdict on the

---

4. The Baldwins approached the law firm of Cogswell & Wherle for representation in the Melroe bankruptcy proceeding. The Baldwins told Cogswell & Wherle they believed Irving Melroe was going to transfer assets out of the bankruptcy estate. Unbeknownst to the Baldwins, Cogswell & Wherle already represented Irving Melroe. Subsequently, the firm told the Baldwins it would not be able to represent them in the Melroe bankruptcy proceeding. The Baldwins sued the lawfirm for fraud. As part of the settlement, Cogswell & Wherle paid the Baldwins $5,000 to cover legal fees.

5. Emphasis added.

6. The Baldwins' motion in limine specifically sought, among other matters, the exclusion of:

> 1. Any matter that tends to contradict the Final Judgment or other Orders and actions of the United States Bankruptcy Court for the District of Colorado in the case of In Re: Irving L. Melroe, Debtor, Cause No. 85–B03631C;
> 2. Any and all items having to do with or in any way associated with the Michigan and Chestnut investment properties in Chicago, Illinois, but not limited to any and all payments received by Ed and Irene Baldwin from Michigan–Chestnut or Ron Wolf;
> . . .

Baldwins' affirmative defenses of res judicata or collateral estoppel. Hunt's first issue is overruled.

## III. Second Issue

In her second issue, Hunt contends the trial court erred in: (1) excluding the Michigan–Chestnut, Cogswell & Wherle, and Melroe bankruptcy settlement evidence; (2) granting directed a directed verdict and in refusing to submit jury questions on her claims for usury, wrongful execution, abuse of process, conversion, fraud, conspiracy, money had and received, and malice; and (3) determining the amount of credits on the 1985 judgment without evidence of the Michigan–Chestnut and Cogswell & Wherle collections.

### A. Exclusion of Evidence

Hunt claims the trial court erred in excluding evidence of the Michigan–Chestnut and Cogswell & Wherle collections and the Melroe bankruptcy settlement. Specifically, Hunt complains that the Michigan–Chestnut interest sold for $25,000 as part of the Melroe bankruptcy settlement, when it was actually valued at $500,000 to $1,000,000. She further maintains the 1985 judgment was satisfied by the several hundred thousand dollars in payments the Baldwins ultimately received from the Michigan–Chestnut interest.

■ The admission or exclusion of evidence rests within the sound discretion of the trial court. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal of a judgment based upon error in the admission or exclusion of evidence, the appellant must show: (1) the trial court did in fact commit error, and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

■ Hunt's argues the trial court erred in excluding evidence regarding the sale of the Michigan–Chestnut interest pursuant to the Melroe bankruptcy settlement. Hunt, however, mistakenly bases this argument on the theory that such evidence was excluded on the granting of a directed verdict on appellees' affirmative defenses of res judicata and collateral estoppel. First, as previously determined, there is nothing in the record to indicate that the trial court granted a directed verdict on any of the Baldwins' affirmative defenses or that such evidence was excluded for any reason other than relevance. Moreover, res judicata and collateral estoppel are not relevant to the exclusion of evidence, but, rather, are relevant to whether a party can relitigate a claim or fact issue in the current litigation. *Quinney Elec., Inc. v. Kondos Entertainment, Inc.,* 988 S.W.2d 212, 213 (Tex.1999) (per curiam) (stating collateral estoppel prevents party from relitigating issue that it previously litigated and lost); *Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 358 (Tex. 1998) (per curiam) (stating res judicata precludes relitigation of claims or causes of action which have been finally adjudicated, or that arise out of same subject matter and could have been litigated in prior action). Hunt raises no other grounds on appeal and has not shown trial court error.

■ Hunt further argues the 1985 judgment was satisfied by the payments the Baldwins received from the Michigan–Chestnut interest and such evidence was erroneously excluded. Texas law, however, does not provide for crediting to a judgment profit later realized by the purchaser of a debtor's property; instead, the debtor is only entitled to the actual purchase price credited to the judgment. *See Matrix, Inc. v. Provident Am. Ins. Co.,* 658 S.W.2d 665, 666 (Tex.App.—Dallas

1983, no writ) (holding present value of note was of no consequence because price paid by purchaser at sheriff's sale would be value credited to unsatisfied judgment); *People's Sav. Bank v. Marrs*, 206 S.W. 847, 848 (Tex.Civ.App.—Amarillo 1918, no writ) (holding amount properly credited to judgment is price paid at sheriff's sale, but profits realized from sale would not be credited to judgment). The amount collected by the Baldwins from the Michigan–Chestnut interest could not be credited to the judgment. Therefore, we hold that the trial court properly excluded evidence of prior payments.

**B. Directed Verdicts & Jury Questions**

■■■■ Hunt next contends the trial court erred in granting a directed verdict on her claims for usury, wrongful execution, abuse of process, conversion, fraud, conspiracy, money had and received, and malice. A directed verdict is proper when: (1) a defect in the opponent's pleadings makes them insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex. App.—Houston [14th Dist.] 1994, writ denied). When reviewing the granting of a directed verdict on an evidentiary basis, the appellate court must decide whether there is any evidence of probative value to raise an issue of fact on the material questions presented. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304 (Tex.1988) (per curiam). If there is any conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and the case must be reversed and remanded for the jury's determination of that issue. *Szczepanik v. First So. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). We must "consider all the evidence in a light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences, [and] give the losing party the benefit of all reasonable inferences created by the evidence." *Id.*

■■■■ Hunt further claims the trial court erred in not submitting questions to the jury on her claims for usury, wrongful execution, abuse of process, conversion, fraud, conspiracy, money had and received, and malice. Rule 278 of the Texas Rules of Civil Procedure requires the trial court to submit requested questions to the jury if supported by the pleadings and the evidence. TEX.R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). A judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence, if timely raised and properly requested as part of the charge. *Autry v. Dearman*, 933 S.W.2d 182, 188 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (citing *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992) (per curiam)).

**1. Usury**

■■■■ The elements of usury are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Grotjohn Precise Connexiones Int'l, S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 875 (Tex.App.—Texarkana 2000, no pet.). Hunt alleges the 1985 judgment had been fully paid through the Michigan–Chestnut collections prior to the request for and issuance of the writ of execution, thereby making the entire amount sought in the writ of execution a charge of usurious in-

terest. As determined above, any amounts collected by the Baldwins from the Michigan Chestnut interest, as profits realized from the purchase of the debtor's property, cannot be credited to the 1985 judgment. *See Matrix, Inc.*, 658 S.W.2d at 666; *Marrs*, 206 S.W. at 848. Therefore, Hunt's usury claim cannot be based upon satisfaction of the 1985 judgment.

Alternatively, Hunt claims that because the writ of execution did not reflect credit for payments previously made on the 1985 judgment, the resulting overstated amount of the unpaid judgment constituted usurious interest. In support of her contention that the writ of execution charged a usurious interest, Hunt relies on *Moore v. Sabine Nat'l Bank*, 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.), and *George A. Fuller Co. of Tex., Inc. v. Carpet Servs., Inc.*, 823 S.W.2d 603 (Tex.1992). We find that neither *Sabine National Bank* nor *George A. Fuller Co.* supports Hunts position. In *Sabine National Bank*, the creditor brought an action against the debtor, who had defaulted on a retail installment contract for the purchase of a mobile home; the debtor, in turn, cross-claimed for usury for failure to rebate any unearned finance charge. *Moore*, 527 S.W.2d at 210. After examining the bank's notice of intention to repossess, original petition, and sequestration affidavit, the court concluded that the bank had made a demand on the debtor to pay a sum, which included an unearned finance charge. *Id.* at 212.

The Texas Supreme Court, in *George A. Fuller Co.*, held that a pleading asserting a claim for prejudgment interest for a period when no interest is due does not constitute a "charge" of usurious interest for purposes of the usury statute. *George A. Fuller Co.*, 823 S.W.2d at 603. In *George A. Fuller Co.*, the creditor, a subcontractor of the debtor on a commercial construction project, filed an original petition in which it pleaded for prejudgment interest for a period commencing before the owner paid the debtor part of the contract debt. *Id.* The supreme court discussed *Moore:*

> The question whether a pleading can charge interest was addressed in *Moore v. Sabine National Bank*, ... In that case, the court of appeals held that the statements contained in Sabine National Bank's notice of intention to repossess, its original petition, and its sequestration affidavit constituted a usurious charge within the meaning of articles 5069–8.01 and 5069–8.02. Subsequent cases interpreting *Sabine National Bank* have held that merely filing a pleading asserting usurious interest constitutes a usurious charge ...
>
> However, on the facts, *Sabine National Bank* is distinguishable from *Fuller*. Carpet Services only pleaded for usurious prejudgment interest. In contrast, Sabine National Bank sent the debtor a notice of intention to repossess in addition to the pleadings. The *Sabine National Bank* court was not faced with the question [of] whether a demand for prejudgment interest in the pleadings alone is sufficient to be a charge of interest. The courts of appeals that have cited *Sabine National Bank* for the proposition that a pleading is a charge of interest did not consider the fact that, *in addition to the pleading, a notice of intention to repossess was sent to the debtor.* Therefore, the court of appeals properly held that *Sabine National Bank* does not support the proposition that a pleading for usurious prejudgment interest, by itself, can constitute a charge of interest within the meaning of article 5069–1.06.

*Id.* at 604–05 (emphasis added).

Hunt argues *George A. Fuller Co.* approved *Sabine National Bank* for the

proposition that a usurious charge can be contained in a sequestration affidavit. To the contrary, the supreme court emphasized that the distinguishing factor in *Sabine National Bank* was the charge of usurious interest contained in the notice of intention to repossess. *See Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 493 (Tex.App.—Corpus Christi 1999, no writ) (observing that "the Texas Supreme Court distinguished between the nature of a pleading as a demand to the court, and the nature of consumer and commercial credit transactions in which demand is made of the opposing party for payment"); *D & S Kingsway Ventures v. Texas Capital Bank–Richmond, N.A.*, 882 S.W.2d 573, 575 (Tex.App.—Houston [14th Dist.] 1994, no writ) (observing that the *George A. Fuller Co.* court distinguished *Sabine National Bank* "on the basis that the *Sabine* case involved a separate document, in addition to the pleading, which was sent to the debtor requesting payment of a usurious amount of interest").

The San Antonio Court of Appeals further considered a claim for usury based on post-judgment interest. *See Solomon v. Briones*, 805 S.W.2d 916 (Tex.App.—San Antonio 1991), *writ denied*, 842 S.W.2d 278 (Tex.1992) (per curiam). In *Briones*, the court addressed a usury claim that was asserted on the allegation that an attorney's letter written to collect a final judgment contained a usurious charge of post-judgment interest. *Id.* at 917. Reversing the trial court's judgment in favor of the judgment debtor, the court of appeals explained:

> all parties concede and the record reflects that the cause of action was based entirely on letters written to collect a judgment and did not involve a loan transaction which required the repayment of a loan of money from appellant to the appellee.... Indeed, it was the actions of the appellant in trying to collect the judgment, rather than extending the time for its payment, that caused the filing of this suit. There is no evidence in this record of use, forbearance, or detention of money loaned to sustain the findings of usury.

*Id.* at 918. Denying writ of error in *Briones*, the Texas Supreme Court stated that "[a] demand for postjudgment interest arises from the judicial process rather than directly from a commercial or consumer transaction, and is therefore not a 'charging' under the usury laws." *Briones v. Solomon*, 842 S.W.2d 278 (Tex.1992) (per curiam) (citing *George A. Fuller Co.*, 823 S.W.2d at 605).

As in *Briones*, the writ of execution in this case was issued solely for the purpose of collecting an unsatisfied final judgment. Therefore, the incorrect stated amount in the writ of execution arises from the judicial process and is not a charging of usurious interest in connection with a commercial or consumer transaction. We hold the trial court did not err in granting a directed verdict and refusing to submit a jury question on Hunt's usury claim.

### 2. Abuse of Process

Abuse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex.App.—Texarkana 1989, no writ). The elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act. *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ de-

nied). It is critical that the process be improperly used *after* it has been issued. *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). Texas law recognizes a cause of action for abuse of process where the original process, such as a writ, has been abused to accomplish an end other than that which the writ was designed to accomplish. *Bossin*, 894 S.W.2d at 33 (citing *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.)). In other words, the original issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not intended. *Martin*, 578 S.W.2d at 769. When the process is used for the purpose for which it is intended, even though accomplished by an ulterior motive, no abuse of process has occurred. *Baubles & Beads*, 766 S.W.2d at 378. "If wrongful intent or malice *caused the process to be issued initially,* the claim is instead one for malicious prosecution." *Bossin*, 894 S.W.2d at 33 (emphasis added).

■■■ Hunt alleges the Baldwins caused a false affidavit to be sworn and a false and usurious writ of execution to be issued and served, thereby collecting money that was not owed on the 1985 judgment. Interpreting Hunt's contention, it is apparent that she is not arguing that the original purpose of the writ of execution was unjustified. Rather, Hunt asserts that the original purpose of the writ of execution was for an improper use, i.e., to collect money on an already satisfied judgment. To maintain a cause of action for abuse of process, it must be established that the process was improperly used *after* it was issued. *RRR Farms, Ltd.*, 957 S.W.2d at 133. Here, Hunt has not alleged a cause of action for abuse of process, but is actually asserting a cause of action for malicious prosecution of a civil claim, a cause of action not asserted in this lawsuit. Therefore, we hold the trial court did not err in granting a directed verdict and refusing submission of a jury question on abuse of process.

### 3. Wrongful Execution

■■■ Hunt claims appellees executed on exempt property because they seized two heifers, when they were entitled to seize only one. TEX. PROP.CODE ANN. § 42.002(a)(10(B) (Vernon 2000) (providing twelve head of cattle are exempt as personal property). Under Texas law, the measure of damages for wrongful execution is the actual value of the property at the time the levy was made. *McAden v. Soil Improvement Corp.*, 394 S.W.2d 662, 664 (Tex.Civ.App.—Texarkana 1965, no writ)). Hunt argues her cause of action for wrongful execution arose when the writ of execution was levied to enforce the already satisfied 1985 judgment, resulting in the loss of her heifer. Profits later realized on property acquired cannot be credited to the judgment. *Matrix, Inc.*, 658 S.W.2d at 666; *Marrs*, 206 S.W. at 848. The only property alleged by Hunt to have been wrongfully seized was one heifer. Hunt, however, did not present any evidence regarding her damages in support of her wrongful execution claim, i.e., the difference between the value of the heifer at the time it was seized versus the amount for which it was sold. Also, because the 1985 judgment was still outstanding, there was no wrongful execution on the basis that the 1985 had been satisfied.

■■■ Relying on *Long v. Castaneda,* 475 S.W.2d 578 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.), Hunt further claims appellees did not give her credit for payments previously made and sums collected, therefore, the writ of execution was void. In *Long*, the court held the

process and resulting sale were rendered void because the writ of execution failed to properly identify the judgment debtor. *Id.* at 583–84. *Long,* however, is not applicable to the facts of this case. Stating the incorrect amount of the judgment in the writ of execution does not render the writ or the sale void:

> When a judgment is for a sum of money, or directs the payment of a sum of money, an execution issued thereon must specify in the body thereof the sum recovered or directed to be paid and the sum actually due when it is issued, and the rate of interest on the sum due. But the recital that the judgment was for an amount larger than was actually rendered is a mere irregularity which does not render the execution void.... A sale rendered thereon is not subject to collateral attack and the purchaser obtains good title.

34 TEX. JUR.3D *Enforcement of Judgments* § 53 (1984) (citing *Sykes v. Speer,* 112 S.W. 422, 424 (Tex.Civ.App.1908), *modified,* 102 Tex. 451, 119 S.W. 86 (1909)). Accordingly, the fact that the writ of execution in this case overstated the amount due on the 1985 judgment does not render it void. Moreover, a judgment creditor cannot be held liable for wrongful execution, unless it directs or participates in the execution. *See Southwestern Bell Telephone Co. v. Wilson,* 768 S.W.2d 755, 760 (Tex.App.—Corpus Christi 1988, writ denied) (finding judgment creditor was liable because its attorney was present at execution and supervised sheriff during seizure of property); *Executive Sportsman Ass'n v. Southwest Bank & Trust Co.,* 436 S.W.2d 184, 185 (Tex.Civ.App.—Waco 1968, writ dism'd w.o.j.) (finding judgment creditor was liable because it located and pointed out property to be seized, and ratified transaction by accepting proceeds of sale and crediting proceeds to debt, all

while on notice that property did not belong to judgment debtor).

Here, there is no evidence that either the Baldwins or Rohrbach supervised the sheriff or otherwise participated in the execution of the writ. To the contrary, Rohrbach testified that he never spoke to the sheriff prior to the service of the writ, but that he only forwarded the writ to the sheriff. Indeed, the evidence shows that after receiving the writ of execution, the sheriff called Hunt, who met with the sheriff at his office and acknowledged that she owed the Baldwins on the 1985 judgment, but not the amount stated on the writ of execution. Hunt told the sheriff she would determine whether she had any property above the exempt amount. Hunt informed the sheriff that she owned two heifers above the exemption limit, and voluntarily turned them over to the sheriff to be sold. Accordingly, we hold the trial court did not err in granting a directed verdict and refusing to submit a question to the jury on Hunt's claim for wrongful execution.

### 4. Conversion

"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971). The elements of conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property. *Akin v. Santa Clara Land Co., Ltd.,* 34 S.W.3d 334, 344 (Tex.App.—San Antonio 2000, pet. denied).

Hunt's cause of action for conversion is based on the taking of the heifers and distributions in the RTF Partnership, which was owned by Hunt and Lovell, after the 1985 judgment has been satisfied by the Michigan–Chestnut collections. As addressed above, the trial court properly excluded the evidence concerning the Michigan–Chestnut collections; thus, there was no conversion of the two heifers and the RTF Partnership distributions because the judgment was still unsatisfied. Moreover, to the extent that Hunt claims the sheriff was only entitled to seize one heifer as nonexempt property pursuant to the writ of execution, Hunt voluntarily gave the sheriff two heifers. We hold the trial court did not err by granting a directed verdict and refusing to submit a jury question on conversion.

### 5. Money Had and Received

A cause of action for money had and received arises when the defendant obtains money which in equity and good conscience belongs to the plaintiff. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.—El Paso 1997, no writ). A cause of action for money had and received is not based on wrongdoing, but, instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Id.* In short, it is an equitable doctrine applied to prevent unjust enrichment. *Phippen v. Deere & Co.*, 965 S.W.2d 713; 725 (Tex.App.—Texarkana 1998, no pet.); *Miller–Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex.App.—Dallas 1996, no writ). Hunt brought claim for money had and received to recover the amounts the Baldwins received in the RTF Partnership and damages for the sale of the heifers. Once again, Hunt bases this cause of action on her argument that the 1985 judgment had been satisfied by the Michigan–Chestnut

collections. Because the judgment was not satisfied, Hunt cannot show that the Baldwins are holding any money, which in either equity or good conscience belongs to her. Therefore, the trial court did not err in granting a directed verdict or in refusing to submit a jury question on Hunt's claim for money had and received.

### 6. Fraud

The elements of fraud are: (1) a material misrepresentation, (2) that was false, (3) that was either known to be false when made or without knowledge of the truth, (4) that was intended to be acted upon, (5) that was relied upon, and (6) that caused injury. *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). Hunt basis her fraud claim on her assertion that the writ of execution was issued on a false affidavit. Specifically, Hunt contends the Baldwins and Rohrbach made a material misrepresentation concerning the amount owed on the 1985 judgment with the intent that the issuing clerk, the serving sheriff, and Hunt would act and rely on that misrepresentation.

There is no evidence that appellees knew the information contained on the affidavit and writ was false or that it was the made recklessly and without regard to its truth or falsity. Prior to contacting Rohrbach about the need to keep the 1985 judgment alive, another attorney at Rohrbach's firm handled the Baldwins collection efforts. When the Baldwins contacted Rohrbach, the attorney who was aware of certain payments made pursuant to the judgment was no longer at Rohrbach's firm. Rohrbach was not aware of the credits to the 1985 judgment at the time he requested the writ of execution. Rohrbach testified that he never inquired of the Baldwins whether there had been any payments on the 1985 judgment. While Rohr-

bach may have been negligent in fully investigating payments made to the 1985 judgment, such negligence, if any, does not rise to the level of fraud. *See Martin v. MBank El Paso, N.A.,* 947 F.2d 1278, 1281 (5th Cir.1991). Furthermore, the record does not support Hunt's reliance claim. She admitted to the sheriff that there was a balance due, but disputed the accuracy of the total amount of the 1985 judgment as stated on the writ of execution. We hold the trial court did not err by granting a directed verdict and refusing to submit a jury question on Hunt's cause of action for fraud.

### 7. *Conspiracy*

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means. *Operation Rescue–National v. Planned Parenthood of Houston & S.E. Tex., Inc.,* 975 S.W.2d 546, 553 (Tex.1998). The elements of conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages. *Id.* Because the defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable, conspiracy is considered a derivative tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996). Therefore, to prevail on a civil conspiracy claim, Hunt must show that appellees were liable for some underlying tort. *Trammell Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 635 (Tex.1997). Because this record will not support an assertion that appellees are liable for any of the causes of action underlying Hunt's conspiracy claim, there is no factual or legal basis for Hunt's conspiracy claim. Therefore, the trial court did not err in granting a directed verdict or refusing to submit a jury question on Hunt's conspiracy claim.

### 8. *Malice*

In support of her claim for punitive damages, Hunt alleged appellees' actions were performed with malice. It is well settled there can be no recovery for punitive damages in the absence of an award of actual damages. *Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998); *Seymour v. American Engine & Grinding Co.,* 956 S.W.2d 49, 60 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Because a directed verdict was proper on all grounds which would have entitled Hunt to recover actual damages, there is no basis for punitive damages. Therefore, the trial court did not err in granting a directed verdict or refusing to submit a question to the jury on Hunt's claim that appellees' actions were performed with malice.

### C. Determination of Credits to 1985 Judgment

Hunt also asserts that it was error for the trial court to determine the credits to be applied to the 1985 judgment without evidence of the Michigan–Chestnut and Cogswell & Wherle collections. Hunt, however, does not otherwise contest the amount of the credits as determined by the trial court. The trial court did not err in refusing to credit prior collections from the 1985 judgment, because only the price paid by the Baldwins for the Michigan–Chestnut interest may be applied to satisfy the 1985 judgment. *See Matrix, Inc.,* 658 S.W.2d at 666; *Marrs,* 206 S.W. at 848. Also, the additional amount the Baldwins received from the partnership interest, and the settlement with Cogswell & Wherle was allowed to pay legal fees.

In summary, the trial court did not err in excluding evidence regarding the Melroe bankruptcy settlement and the amounts collected by the Baldwins from

the Michigan–Chestnut interest and the Cogswell & Wherle settlement. Furthermore, the trial court did not err in granting a directed verdict or in refusing to submit jury questions on Hunt's claims for usury, abuse of process, wrongful execution, conversion, money had and received, fraud, conspiracy, and malice. Moreover, the trial court properly determined that the credits to be applied to 1985 judgment did not include collections from the Michigan–Chestnut interest and the Cogswell & Wherle settlement. Accordingly, Hunt's second issue is overruled.

### V. THIRD ISSUE

■ In her third issue, Hunt claims the trial court erred in denying her trial amendment, in which she which asserted that she had been released from all liability on the 1985 judgment by the settlement agreement in the Melroe bankruptcy proceeding. Hunt bases this assertion on Ed Baldwin's testimony that she was a party to the Melroe bankruptcy proceeding. Hunt contends she was released from liability under the 1985 judgment by settlement agreement because she was a party to the Melroe bankruptcy proceedings.[7]

After both sides had rested, but prior to the trial court hearing objections to the charge, Hunt moved for leave to file a trial amendment by dictating into the record:

> Comes now Louva Hunt and makes this her motion for a trial amendment and would amend and supplement by way of a supplemental pleading to her latest operative petition the following: Louva Hunt hereby pleads release with respect to the Irving Melroe bankruptcy.

Hunt never presented the trial court with a written trial amendment and never received a written order denying her leave to file a trial amendment.

■ The trial court's allowing or denying a trial amendment will be reversed only upon a showing of abuse of discretion. *Heritage Manor, Inc. v. Tidball*, 724 S.W.2d 952, 954 (Tex.App.—San Antonio 1987, no writ). There is no abuse of discretion shown in the denial of a trial

---

7. Hunt relies on the following language in the settlement agreement in the Melroe bankruptcy proceeding:

> ... general releases ... will be exchanged between all parties to the aforementioned lawsuits, bankruptcy proceedings, civil actions ...
>
> \* \* \*
>
> the general releases ... shall include all of the litigants in the aforedescribed civil actions ... and bankruptcy proceedings.... All of these releases shall be such as to release all claims of any type and kind which have been made or could have been made, both known and unknown, by any of the parties executing this release.
> The parties hereto agree that all other matters or claims, known or unknown, asserted or unasserted, between or among any of the parties will be settled, resolved or released.

However, the general release to the settlement agreement specifically provided that Hunt was not released by the Melroe bankruptcy settlement:

> We further agree to execute such documents as are necessary to satisfy the judgment as against Irving Melroe only, which we were awarded in Civil Action No. CA–2–83–0039 in the United States District Court for the Northern District of Texas, Amarillo Division, ...
> It is expressly understood and agreed among the parties that the releases described above and satisfactions of judgment which are to be executed in connection with this agreement shall not include satisfaction with regard to James R., Louva H. Lovell or Edward Melroe, co-defendants in the afore-described Civil Action in Texas. It is further expressly agreed that no language in this General Release is intended to release or shall be interpreted as releasing, in whole or in part, any claims, demands, rights, or causes of action which we may have now or hereafter against James R. Lovell, Louva H. Lovell or Edward Melroe or the bankruptcy estate of Irving Melroe.

amendment where the record does not reflect that a written trial amendment was offered and where no such instrument is found in the record. *Metot v. Danielson,* 780 S.W.2d 283, 285 (Tex.App.—Tyler 1989, writ denied); *Heritage Manor, Inc.,* 724 S.W.2d at 954; *Robert Nanney Chevrolet Co. v. Evans & Moses,* 601 S.W.2d 411, 413–14 (Tex.Civ.App.—Beaumont 1980, no writ); *Templeton v. Unigard Sec. Ins. Co.,* 551 S.W.2d 514, 516 (Tex.Civ. App.—Fort Worth 1977, writ ref'd n.r.e.); 5 TEX. JUR. 3D *Appellate Review* § 620 (1999). By her failure to tender a written trial amendment to the trial court, Hunt has failed to demonstrate that the trial court abused its discretion in denying such trial amendment. Hunt's third issue is overruled.

## VI. FOURTH ISSUE

 In her fourth issue, Hunt contends the jury's failure to award her reasonable attorney's fees was against the great weight and preponderance of the evidence in view of the trial court's finding of credits on the judgment. The Declaratory Judgments Act provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The determination of the amount of attorney's fees to be awarded under section 37.009 is a question of fact for the trier of fact. *Hansen v. Academy Corp.,* 961 S.W.2d 329, 333 (Tex. App.—Houston [1st Dist.] 1997, writ denied); *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex.App.—El Paso 1993, no writ). How-

ever, the determination of whether to award attorney's fees at all is solely within the sound discretion of the trial court. *Hansen,* 961 S.W.2d at 333; (citing *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996)). The award of attorney's fees in a declaratory judgment action is not dependent upon a finding that the party prevailed. *Barshop,* 925 S.W.2d at 637. The award of attorney's fees will be reversed only upon a showing of an abuse of discretion. *Martin v. Lovorn,* 959 S.W.2d 358, 362 (Tex.App.—Houston [14th Dist.] 1998, no pet.).

 Section 37.009 imposes four limitations on the trial court's discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). The attorney's fees must be: (1) reasonable, (2) necessary, (3) equitable, and (4) just. *Id.* Whether the attorney's fees are reasonable and necessary are fact questions. *Id.* Whether the attorney's fees are equitable and just are matters of law, which come within the trial court's discretion. *Id.* The court may conclude it is not equitable or just to award reasonable and necessary attorney's fees. *Id.; see also Sharp v. Hobart Corp.,* 957 S.W.2d 650, 654 (Tex.App.—Austin 1997, no writ) (stating that prevailing party in declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just).[8]

Hunt has failed to explain how the jury's zero-finding is against the great weight and preponderance of the evidence by her failure to provide any citations to the record or supporting authority. She has not

8. The four-prong review involves a dual standard of review—while the decision to award attorney's fees is reviewed under the abuse of discretion standard, the fee, if awarded, is reviewed under the legal and factual sufficiency standard. *Bocquet,* 972 S.W.2d at 22 (Baker, J., dissenting).

addressed any of the factors used in determining the reasonableness and necessity of attorney's fees.[9] The only argument Hunt has advanced on appeal is that it was not necessary to segregate the time her attorneys spent on her declaratory judgment action from the time spent on her remaining claims because all her claims arose out of the same transaction. Therefore, Hunt has waived this issue on appellate review. TEX.R.APP. P. 38.1. Moreover, Hunt does not challenge the trial court's decision not to award her attorney's fees. *See Hansen,* 961 S.W.2d at 333 (citing *Barshop,* 925 S.W.2d at 637) (stating that determination of whether to award attorney's fees is solely within trial court's discretion). Hunt's fourth issue is overruled.

Having overruled each of Hunt's issues, we, accordingly affirm the judgment of the trial court.

---

**9.** The factors to consider in determining whether attorney's fees are reasonable and necessary are found in the Texas Disciplinary Rules of Professional Conduct. *Bocquet,* 972 S.W.2d at 21 (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. (State Bar Rules, art X, § 9)). Those factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997) (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04).